## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Disability Support Alliance, on behalf
of its members; and Zach Hillesheim,

               Plaintiffs,

   v.

The Hitching Post of Marshall, Inc.;
and Thomas L. Handeland,

               Defendants,

Case No. 15cv2747 DWF/BRT

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF
MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs sued The Hitching Post of Marshall, Inc. and Thomas L. Handeland, the owner of a building in Marshall, Minnesota, alleging insufficient accessible parking under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"). Defendant moves the court for an order dismissing Plaintiffs' causes of action for lack of Article III standing and otherwise failing to state a claim upon which relief can be granted.

## FACTS

The facts, for the purposes of this motion, are those set forth in the Complaint, with such facts being taken in the light most favorable to the Plaintiffs as the non-moving party pursuant to the legal standards set forth below, and facts contained in affidavits submitted in support of Defendants' memorandum of law.[1]

---

[1]   In analyzing a motion to dismiss under Rule 12(b)(1), a court is permitted to consider information outside of the

According to the Complaint, Plaintiff, Zach Hillesheim, is a man with a physical disability necessitating use of a wheelchair and who lives in Jackson, Minnesota. Plaintiff Disability Support Alliance ("DSA") is a non-profit corporation, which Plaintiff Hillesheim is a member of, that has the mission of "eliminating discrimination on the basis of disability" and improving the lives of those with disabilities. *Complaint ¶ 8.* Defendant The Hitching Post of Marshall, Inc. ("Hitching Post") operates a restaurant located at 1104 East Main Street, Marshall, Minnesota. *Complaint, ¶ 11.* Defendant Thomas L. Handeland ("Handeland") is the owner of the real property on which The Hitching Post restaurant is located.

Plaintiffs allege "[t]hat the accessible parking spaces in the 'Hitching Post' customer parking lot are insufficient in number and that such spaces are not level, in violation of the ADA and the ADA Accessibility Guidelines ("ADAAG"). *Complaint, ¶¶ 14 & 15.* Plaintiffs plead no plan or other fact which would show immediate injury.

Handeland and The Hitching Post have remedied any alleged deficiencies involving its accessible parking spaces to be compliant with the ADA and ADAAG. *Declaration of Thomas L. Handeland ("Dec. of Handeland"), ¶10.* The alleged barriers identified in the Complaint no longer exist and therefore Plaintiffs are unable to establish a case or controversy for Article III standing. As a result, the complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.

---

pleadings, typically on a factual challenge. <u>Satz v. ITT Fin. Corp.</u>, 619 F.2d 738, 742 (8th Cir. 1980).

## ARGUMENT

### I. Plaintiff Lacks Article III Standing And Their Claims Must Be Dismissed Under Fed. R. Civ. P. 12.

In order to entertain a plaintiff's causes of action every Article III Court Federal Court must have subject matter jurisdiction, which is the ability to hear the case because a case or controversy exists upon which the court may offer relief. U.S. Const. Art. III, Sec. 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009).

In the above-titled matter Plaintiffs lack subject matter jurisdiction over their causes of action because they lack standing before this court. Standing requires plaintiffs to have a direct, personal stake in the outcome of the suit and is an "essential and unchanging part" of this case-or-controversy requirement. Lujan, 504 U.S. at 560 (1992). Standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." Steger v. Franco, Inc., 228 F.3d at 892 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

Plaintiffs' burden relative to Article III standing requires proof: (1) they suffered an "injury-in-fact," (2) there is a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. Steger, 228 F.3d at 892 (citing Lujan, 504 U.S. at 560–61). *All three elements must exist* to establish Article III standing. Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771, (2000). (*Emphasis added.*)

An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. (quoting Lujan, 504 U.S. at 560-61). Further, Title III of ADA provides exclusively for injunctive relief and for a plaintiff to have standing to obtain an injunction he must "demonstrate the real and immediate threat of *future harm*." City of Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983) (Steger, 228 F.3d at 894 (partial concurrence)) (*Emphasis added.*)

Federal courts must be diligent in observing standing requirements, "particularly in view of a recognized trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted." Harris v. Stonecrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1215 (S.D. Cal. 2007). Here Defendants advance no argument as to whether Plaintiffs' lawsuit in the above-titled matter is abusive other than to assert that Plaintiffs appear to be serial ADA litigants as demonstrated by their ADA litigation history.[2]   Of course the serial nature of Plaintiff Hillesheim's ADA litigation activities does not mean Hillesheim lacks standing in every instance.   As discussed below, however, Plaintiffs' motivations to "eliminate discrimination on the basis of disability" appear secondary in nature to a financial motivation.

### A.     Standard of Review.

Where a defendant makes a Rule 12(b)(1) facial challenge to subject matter jurisdiction the district court evaluates such jurisdictional allegations under the standard

---

[2]   Plaintiff Zach Hillesheim is a named plaintiff in at least 14 ADA related cases in the District Court in the District of Minnesota and the Disability Support Alliance, of which Hillesheim is a member, is a named plaintiff in at least 56 ADA related cases in the District Court in the District of Minnesota (and dozens more in Minnesota state courts).  *See Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F.Supp.2d 785, fn1 (N.D. Iowa April 11, 2005)(court may take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings).

set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>Osborn v. United States</u>, 918 F.2d 724, n6 (8th Cir. 1990) (in a facial challenge to subject matter jurisdiction, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)").

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft</u>, 556 U.S. at 678. When reviewing a motion to dismiss, the Eighth Circuit has held that a court "must accept [the] plaintiff[s]' specific factual allegations as true but [need] not ... accept a plaintiff's legal conclusions." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under <u>Twombly</u>. <u>Iqbal</u>, 556 U.S. 662, 678 (citing <u>Twombly</u>, 550 U.S. at 555) (neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice).

**B.      Plaintiffs Have Not Met the Requirement to Initiate a Private Cause of Action.**

Plaintiffs' claims should be dismissed because Plaintiffs facially lack standing.  A Plaintiff facially lacks standing when they fail to allege a necessary standing element in their complaint. *See* <u>Salley v. Catholic Health Initiatives</u>, 509 F.3d 517, 521 (8th Cir.2007).

The ADA provides a private cause of action to a person subjected to discrimination on the basis of disability. 42 U.S.C.A. §12188(a)(1).  As a threshold issue,

a plaintiff must show that he or she has "actual notice that a person or organization covered by this subchapter *does not intend to comply* with its provisions." Id. (*Emphasis added.*).  The majority rule with respect to the §12188(a)(1) notice requirement is that a plaintiff satisfies this requirement when the plaintiff becomes aware of discriminatory conditions existing at a public accommodation and is thereby deterred from visiting or patronizing that accommodation. Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1041 (9th Cir.2008); *see also* Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136-37 (9th Cir.2002); *see also* Disabled Ams. for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir.2005).

### 1.   Plaintiff Not Deterred from Visiting or Patronizing the Hitching Post Restaurant.

Plaintiffs fail to meet this standard.  Plaintiff Hillesheim states that prior to his March 31, 2015, visit which is the basis for his claims in the above-title matter, he "has patronized 'The Hitching Post' on other occasions." *Complaint, ¶13*.  "Other occasions" is plural indicating multiple prior visits to the restaurant by Hillesheim.  By admitting multiple visits prior to his March 31, 2015, visit, Hillesheim is admitting that the alleged barrier did not deter him from visiting or patronizing said restaurant.  It appears that he only became "deterred" at such time as he became aware he could file a lawsuit against Handeland and The Hitching Post which would likely result in a financial settlement benefiting DSA.

### 2.   Failure to Determine Thomas L. Handeland and The Hitching Post of Marshall, Inc. Did Not Intend to Comply with the ADA.

Alternately, Plaintiffs did not obtain the required actual notice that Handeland and The Hitching Post did not intend to comply with the ADA to allow Plaintiffs a private

right of action.

The standard articulated in <u>Doran</u> fails to take into consideration the "does not intend to comply" language contained in §12188(a)(1).  This language is not superfluous. "[D]oes not intend to comply" informs as to the type of information a plaintiff must demonstrate to satisfy the requirements of §12188(a)(1).  Something more than just encountering a barrier must occur.  A business's or business owner's intent with respect to ADA compliance cannot be discerned without some type of pre-litigation communication.  Plaintiffs are anticipated to argue that the ADA has been in effect for two and one-half (2 ½) decades, that Handeland and The Hitching Post have had plenty of time to bring its facility into compliance, and therefore merely encountering an alleged barrier is sufficient notice of intent.  Such argument neglects a myriad of scenarios where a business owner has identified access deficiencies and is in the process of taking corrective action.  For example, a long-term owner of a business may be in the process of a capital improvement project to implement an ADA compliant plan to remodel their facilities.  Alternately, the business may have been recently purchased by the current owner (therefore the current owner has not ignored the ADA requirements for two and one-half (2 ½) decades) and is in the process of updating the business to bring it into ADA compliance.  It cannot be said that such business owners are not intending to comply with the ADA in those scenarios.  The current awareness/deterrence standard fails businesses owners in such circumstances.  Clearly some sort of verbal or written notice to the business owner is necessary to discern the owner's intent in this regard.

Here, neither Handeland nor The Hitching Post received any notice, either written or verbal, from either Plaintiff prior to being served with the Complaint. *Dec. of*

*Handeland, ¶ 8.* And Plaintiffs' Complaint does not allege that they provided Handeland or Hitching Post any notice whatsoever. Had they received such notice Handeland and The Hitching Post could have communicated to Plaintiffs that it was in the process of a completing a $100,000 capital improvement project, including upgrades to the parking lot to address the any parking issues. *Dec. of Handeland ¶ 4.*[3] Such actions substantiate that Handeland and Hitching Post were not refusing to comply with the requirements of the ADA.

Interestingly, in a May 25, 2015, interview with the *Marshall Independent* Plaintiff Zach Hillesheim[4] stated "DSA gives businesses a chance to comply with the ADA before notifying them of potential legal action. Only after that point is a lawsuit filed." *Declaration of Kevin K. Stroup ("Dec. of Stroup") ¶ 1, Ex. 1, pg. 2.* This is patently false in the above-entitled matter. Neither Handeland nor Hitching Post received any notification whatsoever from Plaintiffs of potential legal action. *Dec. of Handeland*, *¶ 7.* Hillesheim states that he "patronized … [the restaurant] on other occasions." How difficult would it have been to notify restaurant staff of his concerns regarding the restaurant's accessible parking spaces?

Furthermore, the alleged violations apparently did not prevent him from patronizing the restaurant on prior occasions. Yet now he asserts that he could not do so as a result of the alleged barriers.

---

[3]  In a July 6, 2015, interview with WCCO 4 News out of Minneapolis, Minnesota, Zach Hillesheim, stated that "If businesses don't want to get sued they should just seek out people who know what they are doing." *Dec. of Stroup, ¶2, Ex. 2.* This is exactly what the Hitching Post was doing as part of its capital improvement project.

[4]  Zach Hillesheim is a named plaintiff in at least 14 ADA related cases in the District Court in the District of Minnesota.

DSA member Scott Smith contradicted Hillesheim's assertion and confirmed that no notice is provided to a targeted business when he stated in the same interview that "[w]hen all you do is sit down and talk with people, they don't feel like they really have to change.[5]  The discussion stalls out, and you don't really make any progress." *Dec. of Stroup, ¶1, Ex. 1, pg. 1.*  Neither Handeland and Hitching Post had any opportunity to demonstrate its intent as there was no: i) discussion of alleged violations; ii) notice of potential legal action; or iii) discussion of the restaurant's capital improvement plan involving its parking lot.

Perhaps the motivation of DSA is best reflected in its refusal to work with the Marshall Chamber of Commerce on accessibility barrier issues involving Marshall area businesses with access barriers. *Affidavit of Cal Brink ("Aff. of Brink") ¶ 5*; *Dec. of Stroup, ¶1, Ex. 1, pg. 3.*  The Chamber of Commerce offered to work in good faith with DSA involving businesses identified by DSA having access barrier issues. Id.  Upon identification by DSA the Marshall Chamber intended to work with such business to correct identified barriers before a lawsuit would be filed. Id.  DSA refused the Chamber's offer. Id. As discussed above, it gives the impression that Plaintiffs' primary motivation is other than "elimination of discrimination on the basis of disability." *Complaint ¶8.*

Plaintiffs' compliance with the §12188(a)(1) "actual notice" requirement must include more than simply encountering a barrier and a rote bare bones recitation that such deters Plaintiff Hillesheim from future visits of the restaurant; particularly since

---

[5]    Scott Smith, a member of DSA is a named plaintiff in at least 29 ADA related cases in the District Court in the District of Minnesota.  *See* Sioux Biochemical, 410  F.Supp.2d at 785, fn1 (court may take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings).

Hillesheim had patronized the restaurant on other occasions without incident or deterrence, and the Defendants were in the process of ensuring compliance with the ADA and ADAAG.

### C.    Plaintiff Has Not Alleged An Injury-In-Fact.

Plaintiffs allege no actual harm or injury, nor did either Plaintiff experience any 'actual damages' injury as a result of the alleged discriminatory nature of Defendants' parking lot. Plaintiff Hillesheim has patronized Defendants' restaurant on prior occasions, *Complaint ¶13;* and apparently without incident and without being deterred from future visits.  The "injury" allegation in the pleadings is based exclusively upon the Defendants' threadbare assertion of an intent to return. *Complaint, ¶¶16, 41, 50.*

As discussed above, Plaintiffs must sustain an injury-in-fact, a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Steger, 228 F.3d at 893.  As the ADA provides exclusively for injunctive relief, for a plaintiff to have standing to obtain an injunction he must "demonstrate the real and immediate threat of *future harm*."  Lyons, 461 U.S. at 101-102 (Steger, 228 F.3d at 894 (partial concurrence)) (*Emphasis added.*)

The Eighth Circuit has established an "intent to return" test to show requisite injury-in-fact in ADA cases. The court explained that "although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, (*see* 42 U.S.C. § 12188(a)(1)), they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." Steger, 228 F.3d at 892.  In order to be "plausible," a

plaintiff's intent to return to the place of the purported violation must also be demonstrated with reasonable specificity; speculative "some day" intentions to return are insufficient. <u>Steger</u>, 228 F.3d at 893 (citing <u>Lujan</u>, 504 U.S. at 564) ("'Some day' intentions - without any description of concrete plans, or indeed even any specification of *when* the some day will be - do not support a finding of the "actual or imminent" injury that our cases require.")

"While there is no definitive test in the Eighth Circuit for determining whether a plaintiff intends to return to a noncompliant accommodation … courts often consider such factors as: (1) the plaintiff's proximity to the accommodation; (2) the frequency of plaintiff's nearby travel; (3) the plaintiff's past patronage; and (4) the definitiveness of plaintiff's plans to return." See e.g., <u>Sawczyn v. BMO Harris Bank Nat. Ass'n</u>, 8 F. Supp. 3d 1108, 1112 (D. Minn. 2014) (internal citations omitted); <u>Reviello v. Philadelphia Fed. Credit Union</u>, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012) (analyzing the four factors to determine "whether [plaintiff] has alleged that he is likely to return to the place of the alleged ADA violation").  "Accordingly, the Court will use these factors to guide its analysis." <u>Sawczyn</u>, 8 F. Supp. 3d at 1112.

> The Complaint alleges, vaguely, that

> "Plaintiff Hillesheim and other DSA members intend to return to "The Hitching Post" to patronize the facility, but these architectural barriers deter them from doing so. They plan to return and patronize "The Hitching Post" when they learn that the premises have been made fully accessible to persons who use wheelchairs for mobility."

Complaint, ¶16. In the same generalized conclusory manner, the Complaint alleges "Plaintiff Hillesheim and other members of Disability Support Alliance plan to visit 'The Hitching Post' again in the near future." *Complaint, ¶41.* These are the only allegations related to any intention to return and patronize Defendants' restaurant.

### 1.    Plaintiff's Proximity to the Accommodation.

"As the distance between a plaintiff's residence and a public accommodation increases, the likelihood of future harm decreases. Specifically, "[w]here the distance between the two is significant …." Steelman v. Rib Crib No. 18, 2012 WL 4026686, at *3 (W.D. Mo. Sept. 12, 2012) *cited with authority* Sawczyn, 8 F. Supp. 3d at 1112. Plaintiffs' state in the Complaint that Plaintiff Hillesheim resides in Jackson, Minnesota. *Complaint, ¶9.* Jackson is located approximately 93 miles, or about a one and one-half (1½) hour drive, from Marshall, Minnesota.[6] Here, on the face of the complaint, there is no information from which a court could determine whether the Plaintiffs are likely, given the 93 mile distance, to return to an unspecified business. While Hillesheim's residence is not beyond the 100 mile standard to automatically fail the proximity element, it is 93% of that standard. It significantly weighs against a finding of an intent to return.

### 2.    The Frequency of Plaintiff's Nearby Travel.

Plaintiff Hillesheim alleges that he continues to travel to Marshall "regularly." *Complaint, ¶9.* He fails to allege the frequency of his visits to determine the scope of the alleged regular travel. (e.g. an annual visit to a trade show, or more frequent activity?)

---

6    The figures in this instance were obtained using Google Maps, but the geographic proximity of the two cities is not readily subject to dispute. The court may take judicial notice of the distance between two locations. *See, e.g.,* Esterling v. McGehee, 2013 WL 6834653, at *1 (D.S.D. Dec. 23, 2013) (taking judicial notice that Herrick is 164 miles from Sioux Falls and 135 miles from Pierre).

There is no allegation that Plaintiffs are traveling to other businesses near Defendants' restaurant on some regular basis which would make the restaurant a likely dining destination.  Without more specificity as to the frequency of travel or the purpose of such travel Hillesheim's threadbare assertion of visiting Marshall regularly fails the "reasonable specificity" requirement articulated in <u>Steger</u>.  This factor does not support an intent to return.

### 3.    The Plaintiffs' Past Patronage.

Plaintiff Hillesheim alleges past patronage of Defendants' restaurant. *Complaint, ¶13.*[7]  He now lives 90 plus miles away in Jackson, Minnesota.  Due  to Hillesheim's relocation, his past history of patronizing Defendants' restaurant is not indicative of any future patronage .  This factor cuts against finding an intent to return.

### 4.    The Definiteness of Plaintiffs' Plans to Return.

Plaintiff Hillesheim has alleged nothing more than a threadbare conclusory statement that he and the unnamed members of the DSA plan to return to Defendants' restaurant. *Complaint, ¶¶16, 41, 50.*  These are nothing more than conclusory statements designed to generate standing for an ADA lawsuit. They are the exact type of "someday" assertions that <u>Lujan</u> decided were insufficient. 504 U.S. at 564.

In cases where the Court has found sufficient allegations of an intent to return, the Plaintiff has alleged in the complaint some <u>specific service or objective</u> in returning to the business. In <u>Sawczyn</u>, the Plaintiff alleged the need and desire to use a specific service (an ATM machine) at the Defendant's premises. 8 F. Supp. 3d at 1110. In <u>Wong v. Muddy</u>

---

[7]    Hillesheim alleges no deterrence related to prior visits.

Pig, the Plaintiff alleged an intent to return and eat at a restaurant located in close proximity to defendant's residence. 2015 WL 225231 at *2. Here, Plaintiffs have not alleged any such specific concrete plan to return. Furthermore, Hillesheim does not live in close proximity to Defendants' restaurant; he is approximately 93 miles from Marshall. Given the long distance, it seems odd that Hillesheim would have regular plans or some concrete plan to visit Defendants' restaurant in the imminent future.

In addition, "[c]ourts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return." Id. (citing Steven Brother v. Tiger Partner, LLC, 331 F.Supp.2d 1368, 1374–75 (M.D.Fla 2004)). Steelman, 2012 WL 4026686, at *4. Here, Plaintiff Zach Hillesheim is a named plaintiff in at least 14 ADA related cases in the District Court in the District of Minnesota and the Disability Support Alliance, of which Hillesheim is a member, is a named plaintiff in at least 56 ADA related cases in the District Court in the District of Minnesota (and dozens more in Minnesota state courts). See Sioux Biochemical, Inc. v. Cargill, Inc., 410 F.Supp.2d 785, fn1 (N.D. Iowa April 11, 2005)(court may take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings). This fact further cuts against Plaintiffs' assertions of their intent to return.

To accept Plaintiffs' complaint as adequate to show the existence of an injury-in-fact would completely eliminate the court's standard of review, and does nothing to further the purposes of the ADA and the MHRA. It merely paves the way for any ADA tester plaintiff to, at any time, could: i) drive by a building; ii) notice an apparent

architectural barrier in a parking lot, iii) take note of its address; and iv) make a threadbare conclusory allegation that he or she intends to go back to the building but for the barrier.[8]   The constitutional requirements of standing demand more. There must be some fact, some substantive basis, for a court to conclude, beyond mere speculation, that the issue upon which the court is being asked to decide is an actual case or controversy.

Plaintiffs have not alleged any facts describing their plans to return with any specificity, including perhaps most critically *when* the return would occur. Their statements are simply threadbare expressions completely void of specific information or particularized detail (i.e. "definiteness").   Plaintiffs pleaded no concrete plan to imminently return and they fail to satisfy the "reasonable specificity" requirements articulated in <u>Lujan</u>. This final factor also weighs heavily against Plaintiffs.  The overall, the results of the intent to return requires the Court to conclude that Plaintiffs have not sufficiently alleged an injury-in-fact.

**D.   Plaintiffs Can Not Show Any Injury Likely to be Redressed by a Favorable Decision.**

As discussed above Article III standing requires that any alleged injury will be redressed by a favorable decision, which is likely to remedy the harm. <u>Steger</u>, 228 F.3d at 893 (Citing <u>Lujan</u>, 504 U.S. at 560).  It cannot be merely speculative that the harm or injury alleged will be redressed. <u>Id</u>.   The burden to prove standing, including the existence of a redressable injury, continues throughout the litigation. "A plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to

---

[8]    Members of DSA have admitted they are ADA testers by conducting "real life access tests". *Dec. of Stroup,* ¶ *3, Ex. 1, pg. 2.*

constitute a justiciable 'case or controversy' under Article III." <u>Sawczyn</u>, 8 F.Supp.3d at 1113 (citation omitted).

Here there is no harm or injury to be redressed by the Court.  This case involves a two alleged parking space violations concerning the Hitching Post restaurant's accessible parking spaces being located on a slope steeper than 1:48.  Subsequent to the filing of the Complaint in this matter Defendants have taken steps to ensure compliance with ADA and ADAAG requirements for the number of accessible parking spaces and that such spaces are located on a level surface. *Dec. of Handeland, ¶¶ 9, 10, 11*. To ensure compliance with the ADA and ADAAG, Defendants contracted with R & H Sealcoating to update the restaurant's parking lot.  Said vendor sub-contracted with Buck's Parking Lines & Signs, a vendor familiar with accessible parking space requirements under the ADA, to stripe the parking lot and install permanent markings relating to the accessible parking spaces <u>Id</u>. *¶ 6*. The striping work has been completed. <u>Id</u>. *¶¶ 10, 11*.  The court is without the power to order any further change as the current condition is now fully compliant with the accessibility requirements under applicable state and federal laws. Defendants are making both a facial and factual challenge to Plaintiffs' standing with respect to the redressability element, because the claims for injunctive relief under the ADA and MHRA are now moot and Plaintiffs therefore lack standing on their claims generally and the case should be dismissed.

### 1. Plaintiffs' Claims are Moot.

Handeland's and Hitching Post's remediation of the alleged ADA violation have mooted Plaintiffs' claims. In <u>Rogers Group, Inc. v. City of Fayetteville</u>, the U.S. 8th Circuit Court of Appeals noted that where defendant(s) have voluntarily made changes before judicial action was taken the case would have been moot. 683 F.3d 903, 911 (8th Cir. 2012); *see also,* <u>Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.</u>, 532 U.S. 598 (2001). The U.S. Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy … if unaccompanied by any continuing, present adverse effects." <u>Renne v. Geary</u>, 501 U.S. 312, 320-321 (1991). The same Court also held that a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. <u>United States v. Concentrated Phosphate Export Assn.</u>, 393 U.S. 199, 203 (1968); <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.</u>, 528 U.S. 167, 189 (2000). The Supreme Court characterized such activity as "voluntary cessation".

In reviewing whether voluntary cessation has occurred other circuits have established the following standards: (1) whether the challenged conduct was isolated or unintentional or continuing and deliberate; (2) whether defendant's voluntary cessation was timed to anticipate litigation; and (3) whether the defendant has admitted liability. <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1184 (11th Cir. 2007).

ADA architectural barrier cases are, however, a "unique subset of voluntary

cessation cases" due to the "nature of structural modifications (as opposed to simply a change in a discriminatory policy)[.]" <u>Houston v. 7-Eleven, Inc.</u>, 2014 WL 351970, at *2 (S.D. Fla. Jan. 31, 2014). "Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant, the case is moot." <u>Id</u>. According to the <u>Houston</u> court "[t]he fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct." <u>Id</u>. (citing <u>Kallen v. J.R. Eight, Inc.</u>, 775 F.Supp.2d 1374, 1379 (S.D. Fla. 2011) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone."); <u>see also</u>, <u>Wilson v. Pier 1 Imports (US), Inc.</u>, 439 F. Supp. 2d 1054 (E.D. Cal. 2006) (dismissing claim as moot after retail establishment replaced undersized parking stalls because it was not reasonable to expect that the owner would change the parking spaces back)).

As previously discussed, remediation of the alleged deficient accessible parking space has been completed. *Dec. of Handeland ¶ 10*.  The accessible parking space at the Hitching Post restaurant is compliant with the ADA and ADAAG. <u>Id</u>.  Further, Mr. Handeland affirmatively states that neither the Hitching Post nor Handeland have any intention to remove or otherwise modify these changes. <u>Id</u>. *¶ 13*.  It is "absolutely clear" the allegedly wrongful condition of the parking lot could not reasonably be expected to recur as the stripping painted on the parking lot is permanent in nature.   Because Handeland and Hitching Post have remediated the alleged deficiencies in their parking lot Plaintiffs cannot hope for any order which might grant them redress and their case is moot.

**2.      Plaintiffs' Lack Standing Relative to Unidentified Violations.**

Plaintiffs allege that other violations of the ADA and ADAAG were encountered by the Plaintiffs and exist at Defendants' restaurant. *Complaint ¶30.* It is anticipated that Plaintiffs intend such allegations as an additional basis for injunctive relief under the ADA.   Yet Plaintiffs cannot meet their burden concerning redressability on such unidentified violations. As discussed in <u>Steger</u>, a Plaintiff "must at least prove knowledge of the barriers and that they would visit the building in the *imminent future* but for those barriers." <u>Steger</u>, 228 F.3d at 892. (*Emphasis added.*)   Plaintiffs here cannot show that any real barrier exists, or that any such barrier would cause Plaintiffs harm in the imminent future.   Had Plaintiffs truly "encountered" other barriers, such barriers are known and they would have surely been identified in Plaintiffs' Compliant.   In a case involving similar conduct by a plaintiff, the U.S. 9th Circuit Court of Appeals rejected such tactics and held that "all alleged access barriers must be identified in Plaintiff's complaint in order to give the defendant fair notice under Rule 8." <u>Oliver v. Ralphs Grocery Co.</u>, 654 F.3d 903, 909 (9th Cir. 2011). <u>Oliver</u> prohibits a Plaintiff from making a bare assertion that other violations may exist without identifying such.   Furthermore, Handeland and Hitching post recently completed a major remodel of the restaurant at which time the contractor brought the restaurant into compliance with the requirements of the ADA and ADAAG.   It is only due to a delay by the vendor hired to sealcoat and stripe the restaurant's parking lot that the barriers alleged by Plaintiff had not been remedied.

As stated in <u>Sawczyn</u>, "[a] plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III." 8 F.Supp.3d at 1113.  Here Plaintiffs now lack standing as the alleged violations have been remedied by Handeland and Hitching Post.

## II.    Plaintiffs' MHRA Claims Must Also Be Dismissed.

Courts generally analyze the public accommodations requirements of the MHRA in the same manner as the ADA. *See, e.g.*, <u>Krueger v. Zeman Const. Co.</u>, 758 N.W.2d 881, 887 (Minn. Ct. App. 2008) aff'd, 781 N.W.2d 858 (Minn. 2010) (interpretation of MHRA guided by interpretation of federal law). See also <u>Fenny v. Dakota, Minn. & Eastern R.R. Co.</u>, 327 F.3d 707, 711 n.5 (8th Cir. 2003); and <u>Roberts v. KinderCare Learning Ctrs., Inc.</u>, 86 F.3d 844, 846 n.2 (8th Cir. 1996))  Therefore, Plaintiffs' lack of standing which result in the failure of Plaintiffs' ADA claims also result in the failure of Plaintiffs MHRA claims.

Alternately, should the Court find differences between the ADA and the MHRA preventing dismissal of the MHRA claims, Handeland and Hitching Post request that this court dismiss the state law claims over which this court has supplemental jurisdiction. *See* 28 U.S.C. 1367(c). A court should only retain jurisdiction over supplemental state law claims in unusual or extraordinary circumstances, which are not present here. *See, e.g.*, <u>Wentzka v. Gellman</u>, 991 F.2d 423, 425 (7th Cir. 1993); <u>Musson Theatrical, Inc. v. Federal Express Corp.</u>, 89 F.3d 1244, 1255 (6th Cir. 1996).

**III.    Plaintiffs' Bias Claims Are Entirely Dependent Upon Its Underlying ADA and MHRA Claims.**

Where neither Handeland nor Hitching Post have committed any violations of the MHRA it is not subject to civil bias offense claims, and Plaintiffs fail to state a claim upon which relief can be granted.

Minnesota Law provides a civil remedy for "conduct that would constitute a crime and was committed because victim's or another's actual or perceived … disability as defined in section 363A.03". Minn. Stat. § 611A.79.  Minnesota Law further makes it a misdemeanor crime to violate Minn. Stat. §363A.11 (Minnesota's public accommodations statute). Minn. Stat. §363A.30, Subd. 4.  However, in the absence of a finding of a violation of Minn. Stat. §363A.11, there is no claim for a "misdemeanor." If the MHRA claim is dismissed, there is no basis for a determination that Handeland or Hitching Post committed a "crime," and the bias offense must therefore be dismissed.[9]

Generally, Minnesota's Courts have determined that a valid claim for violation of Minnesota's bias offense statute, Minn. Stat. § 611A.79, requires a showing that the prohibited "conduct that would constitute a crime and was committed *because of* the victim's or another's actual or perceived … as defined in section 363A.03...." Minn. Stat. § 611A.79. (*Emphasis added.*). See Seivers v. City of Minneapolis, 2011 WL 284486, at *5 (D. Minn. Jan. 25, 2011);  City of Minneapolis v. Richardson, 239 N.W.2d 197, 203 (1976). (police officer's use of this racial epithet, coupled with his physical assault of a young African American boy constituted discrimination "because of" race in violation

---

[9]    To the extent the ADA claim is dismissed and any claim under state law remains, Defendant requests dismissal of any such claim pursuant to 28 U.S.C. § 1367.

of the MHRA); and <u>Rosenbloom v. Flygare</u>, 487 N.W.2d 546, 549 (Minn. App. 1992) (racial epithets coupled with physical contact show racial animus motivating the physical contact) *rev'd on other grounds,* 501 N.W.2d 597 (Minn.1993).

Plaintiffs have pleaded no facts demonstrating they had any interaction with Handeland at all on the date at issue, or an encounter with Hitching Post representatives charged with discriminatory animus. Because Plaintiffs have pleaded no discriminatory animus, i.e. the *because of* requirement of the statute, their claim fails to state a claim upon relief may be granted and the Court should dismiss Plaintiffs' bias offense claim.

## IV.     Disability Support Alliance Should Be Dismissed For Lack of Standing, Even if the Claims Brought by Zach Hillesheim, Individually, Survive.

DSA has sued "on behalf of its members." An association may bring suit on behalf of its members if: 1) a member would have standing in their own right, 2) the interest the organization seeks to protect is germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members. <u>Hunt v. Washington State Apple Advertising Commission</u>, 432 US 333, 342 (1977).

As discussed above, Plaintiff Hillesheim does not have standing in his own right. If he lacks standing, there are no additional allegations in the complaint that would confer standing on any other member of the Disability Support Alliance to bring a claim. <u>See</u> <u>Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.</u>, 2005 WL 2989307, at *5 (N.D. Tex. Nov. 7, 2005) (dismissing organization where complaint only identifies one member of its organization with individual standing).

In the event Hillesheim is not dismissed for lack of standing, the Disability Support Alliance should be dismissed.  A plaintiff choosing to assert organizational standing must be able to demonstrate some injury it has suffered that meets the *prudential* limitations on standing in addition to constitutional standing requirements. See Havens Realty Corporation v. Coleman, 455 U.S. 363, 378-79 (1982). (*Emphasis added.*)  There are three well accepted prudential limitations on standing: (1) there is no jurisdiction over generalized grievances; (2) a plaintiff may not rest a claim for relief on the rights of a third party; and (3) grievances must fall within the zone of interests protected by the relevant statutory provision. Access 4 All, Inc. v. G & T Consulting Co., LLC, 2008 WL 851918, at *5 (S.D.N.Y. Mar. 28, 2008) (citing Access 4 All, Inc. v. Trump Intern. Hotel and Tower Condominium, 458 F.Supp.2d 160, (S.D.N.Y. 2006); *LaFleur v. Whitman*, 300 F.3d 256, 269 n. 2 (2d Cir. 2002)).

As the court in G&T Consulting Co., LLC pointed out, "As a corollary to the second of these prudential limitations, courts have often declined to recognize the standing of associational ADA plaintiffs when the claims they assert are identical to those of the individual plaintiffs in the case." Id., (citing *Access 4 All, Inc. v. Trump,* 458 F.Supp.2d at 173-75 (dismissing claims of associational plaintiff where, although it represented other disabled persons, it had "produced no evidence of injury to other disabled persons or [its] members"); Disabled in Action of Metropolitan New York v. Trump Intern. Hotel & Tower, 2003 WL 1751785 (S.D.N.Y. 2003) (dismissing claims of associational plaintiff because those claims were identical to those of the named plaintiffs

and individuals were "better plaintiffs"); <u>Access 123, Inc. v. Markey's Lobster Pool, Inc.</u>, 2001 WL 920051 (D.N.H. Aug. 14, 2001) (finding that associational plaintiff lacked standing because it merely repeated claims of the member plaintiff)).

Similar to the plaintiff in <u>Access 4 All v. G&T Consulting</u>, DSA has failed to alleged claims that are distinct from the claims of Zach Hillesheim. The complaint does not allege the identity of any other members of the DSA. There has been no allegation in the Complaint that members of the DSA have suffered any distinct injury from those allegedly suffered by Hillesheim. As a result, Handeland and Hitching Post request that that DSA's claims be dismissed for prudential reasons.

## V.      No Standing Conferred by Request for Attorney's Fees and Costs.

As a result of the permanent changes made by Handeland and Hitching Post to the restaurant's accessible parking spaces there is simply no further problem to be redressed by the Court; injunctive relief is no longer necessary, and attorney's fees and costs are not available where the alleged architectural barriers are removed.   Therefore, Plaintiffs cannot be a "prevailing party" under the fee shifting provisions of the antidiscrimination statutes. In <u>Buckhannon</u>, the U.S. Supreme Court ruled that under the ADA, the catalyst theory was insufficient to allow the claimant their attorney's fees and costs.[10] 532 U.S. at 610.  It further determined there needs to be three elements in place, including a judgment in favor of a party.

---

[10]      The <u>Buckhannon</u> court reviewed competing propositions. The catalyst theory,  in summary, allowed for attorney's fees and costs if a plaintiff sued and anytime  thereafter the defendant made changes to their property voluntarily or on a court order.

Under <u>Buckhannon</u>, in order to be a prevailing party, the claimant must first show that there has been a court-ordered change in the legal relationship between the plaintiff and the defendant. 532 U.S. at 604. Next a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded. <u>Id</u>., at 603.  Finally, a claimant must obtain judicial relief beyond a mere pronouncement (i.e. the court's ruling that defendant discriminated) to make the claimant a prevailing party. <u>Id</u>., at 606.

In <u>Baer v. Donovan</u>, Minnesota's Court of Appeals acknowledged that Minnesota courts employ a federal standard in determining whether attorney's fees should be awarded under the MHRA. 763 N.W.2d 681 (Minn. App. 2009).  Consequently, based upon the <u>Buckhannon / Baer</u> factors, when a defendant's voluntary change or remediation occurs prior to the issuance of a court order compelling the defendant to make that change, the situation lacks the necessary judicial *imprimatur* on the change (i.e. because the judge did not order it to occur, the plaintiff cannot be the prevailing party).  That is precisely the situation here. As a result, the Plaintiffs lack any standing based upon some argument for fees under the fee shifting provisions of the antidiscrimination statutes. As a result, the complaint should be dismissed.

## CONCLUSION

Defendants The Hitching Post of Marshall, Inc. and Thomas L. Handeland, respectfully request the Court dismiss Plaintiffs' causes of action for lack of subject matter jurisdiction, based on lack of standing, and for failure to state a claim upon which relief may be granted.  Plaintiffs' claims are moot under the ADA and MHRA.

Respectfully Submitted,

Dated: August 14, 2015

> STONEBERG, GILES & STROUIP, P.A.
>
> By:   s/Kevin K. Stroup
> Kevin K. Stroup, Attorney Reg. No.170094
> kevin@sgslawyers.com
> 300 South O'Connell Street
> Marshall, Minnesota  56258
> Telephone: (507) 537-0591
> ATTORNEYS FOR DEFENDANT